IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE

| | | |
|---|---|---|
| SHERON B. DOSS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:15-cv-00904 |
| | ) | Judge Aleta A. Trauger |
| NORDSTROM, INC, N.A., et al., | ) | Magistrate Judge John S. Bryant |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS, OR IN THE ALTERNATIVE,
TO STAY THE PROCEEDINGS AND COMPEL ARBITRATION

## I. Introduction

Doss agreed to resolve any claim arising from her employment with Defendants pursuant to Nordstrom, Inc.'s ("Nordstrom") Dispute Resolution Program (the "NDRA"). The NDRA requires Doss to pursue final and binding arbitration, rather than proceeding through the courts. Doss' claims in the present lawsuit arise out of her employment. See Complaint at Doc. Entry No. 1. By filing her lawsuit, Doss ignores her contractual obligation to arbitrate. Despite Defendants' request that Doss dismiss her lawsuit and proceed with arbitration, she declined. Doc. Entry No. 11 at Pgs. 1-2. The NDRA falls well within the mainstream of court-approved arbitration programs under the Federal Arbitration Act. Defendants have moved the Court to dismiss (or alternatively, to stay) these proceedings pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), and to compel arbitration. Doss cannot pursue her Title VII and

Age Discrimination in Employment Act ("ADEA") claims related to her employment other than through the NDRA.

In addition, Defendants, Blake Nordstrom, Trevor Cobb, Nichole M. Dingman, and Lauren Luettke, (the individual Defendants collectively referred to as "Nordstrom Personnel") have moved to dismiss the Complaint for failure to state a claim. Under the race and age discrimination legal theories asserted by Plaintiff under Title VII and the ADEA, liability attaches only to the "employer." Doc. Entry 1 at Pgs. 1, 24; Doc. Entry No. 1-1 at Pg. 15) and Doc Entry 1 at Pgs. 1, 24; Doc. Entry 1-1 at Pg. 15) The Nordstrom Personnel were not Plaintiff's employer under well-established caselaw and, in the Sixth Circuit, supervisors may not be individually held liable under Title VII or the ADEA.

## II.  Brief Summary of the Factual and Procedural History

Nordstrom hired Doss as an entry level sales associate in early March 2015. Declaration of Mary Porter ("Porter Decl.") at ¶ 5.[1] As part of the employment application process, Ms. Doss applied for employment at Nordstrom through the Nordstrom Careers website, which provides a secure encrypted online application and new hire onboarding process. Id. Ms. Doss

---

[1] Nordstrom recognizes that the attached Declaration of Mary Porter and supporting exhibits may convert the Motion to Dismiss based on prior analysis by this Court. See generally Saunders v. Am. Intercontinental Univ., No. CIV. 3:14-1045, 2014 WL 5776172, at *3 (M.D. Tenn. Nov. 5, 2014):

> The Defendant's motion was filed as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Although it is unsettled within the Sixth Circuit whether Rule 12(b)(1) or Rule 12(b)(6) is the proper vehicle for a motion to dismiss and/or to compel arbitration, *see Security Watch, Inc. v. Sentinel Sys., Inc.,* 176 F.3d 369, 371 n. 2 (6th Cir.1999); *SCSC, LLC v. Cold Stone Creamery Leasing Co.,* 2012 WL 1424907, *2 (N.D.Ohio Apr.24, 2012); *High v. Capital Senior Living Properties 2–Heatherwood, Inc.,* 594 F.Supp.2d 789, 795 (E.D.Mich.2008); *Moore v. Ferrellgas, Inc.,* 533 F.Supp.2d 740, 744 (W.D.Mich.2008), the Sixth Circuit has, nonetheless, clarified that a party seeking to avoid arbitration must show that there is a genuine issue of material fact as to the validity or applicability of the agreement to arbitrate. *Great Earth Companies, Inc. v. Simons,* 288 F.3d 878, 889 (6th Cir.2002) (applying summary judgment standard to petition to compel arbitration). *See also Smith v. Servicemaster,* 2009 WL 1457143, *4 (M.D.Tenn. May 22, 2009) (Trauger, J.).

Id.

created an account and selected a personal username and password, which Nordstrom keeps confidential. Id. No Nordstrom employee, or any other person, can access an applicant's password or security answer. Id. After Ms. Doss created her account through the Nordstrom Careers website and submitted her application, Nordstrom emailed Ms. Doss a private link to a page on the Careers website where she was asked to acknowledge various terms and conditions of employment at Nordstrom. Id. at ¶ 6. Before starting this part of the process, Ms. Doss had to enter her unique username and password to log on to the Careers website again. Id.

On February 26, 2015, Ms. Doss logged onto the Careers website with her unique user name and password to complete the acknowledgement process. Porter Decl. at ¶ 7. After logging onto the Careers website, Ms. Doss was advised her electronic signature was required before she would be considered for employment at Nordstrom. Id. at ¶ 8. Ms. Doss was specifically given the option to accept or decline the use of an electronic signature to complete her application that included her acknowledgement of various terms and conditions of employment at Nordstrom. Id. at ¶ 8 and Exh. A. Ms. Doss accepted the use of the electronic signature, which acknowledged that she understood her electronic signature was the equivalent of a handwritten one. Id. at ¶ 8 and Exh. B.

Ms. Doss was then asked to review and provide her electronic signature to certain terms and conditions of employment at Nordstrom, with document code "013," entitled "Important Information for You." Id. at ¶ 9 and Exh. C. The "Important Information for You" document contained the following text:

> **Nordstrom Dispute Resolution Agreement:**
> I understand that Nordstrom resolves disputes or claims that arise from an application for employment, the employment relationship and/or the termination of employment through final and binding arbitration as explained in full in the Nordstrom Dispute Resolution Agreement. I understand that neither Nordstrom nor I may pursue courtroom litigation as a means to resolve disputes or claims

4841-7269-9432.4

3

Case 3:15-cv-00904   Document 19   Filed 09/28/15   Page 3 of 14 PageID #: 121

between myself and Nordstrom that are covered by the Nordstrom Dispute Resolution Agreement. My signature below confirms that I have obtained a copy of Nordstrom's Dispute Resolution Agreement by clicking here or by visiting the Nordstrom Careers site or from a Nordstrom Human Resources office. My signature below also confirms that I reviewed the Nordstrom Dispute Resolution Agreement and that I understand and agree to its terms and conditions. If you are having trouble accessing the hyperlink above, please contact Nordstrom Human Resources.

Ms. Doss signed the terms and conditions, entitled "Important Information for You", which included an electronic link to the NDRA. Id. at ¶ 10 and Exh. B.

On March 8, 2015 after Ms. Doss accepted Nordstrom's job offer, and as part of the hiring process that Nordstrom calls "onboarding," Ms. Doss logged into Nordstrom's employee communication system. She was asked to review the NDRA and to provide her signature agreeing to the NDRA. Porter Decl. at ¶ 11. The Nordstrom electronic process requires Ms. Doss specifically to review each page of the NDRA before she could enter her signature agreeing to its forms. Id. In fact, Ms. Doss was required to click on the "continue" button on each electronic page in order to advance to the next page of the NDRA. Id. She also had the option of printing each page of the NDRA for her records. Id.

The final page of the NDRA allowed Ms. Doss to sign and agree to the terms of the NDRA if she accepted its terms. Id. at ¶ 12. To do so, Ms. Doss was required to enter her name and unique login password. A copy of the NDRA Ms. Doss agreed to on March 8, 2015 is attached as Exhibit D. See id. at ¶ 11 and Exh. D. Nordstrom then created a pdf copy of her signature. Id. at Exh. E. Ms. Doss's signature, dated March 8, 2015, confirmed that "*I acknowledge that I have received and reviewed the Nordstrom Dispute Resolution Agreement and that I understand and agree to its terms and conditions.*" Nordstrom's onboarding records confirm Ms. Doss completed this step of the onboarding process. Porter Decl. at ¶ 12 and Exh. F.

Ms. Doss thus confirmed receipt of the NDRA, and again confirmed she had reviewed and agreed to the terms of the NDRA (and other guidelines provided) when she signed Nordstrom's "Employee Acknowledgement and Agreement Form" that same day. Porter Decl. at Exh. G. Ms. Doss confirmed that "*By signing below, I acknowledge and agree that I have received and reviewed my Employee Materials. I have read and will abide by . . . the Nordstrom Dispute Resolution Program . . . .*".

The NDRA Program is simple, straightforward and mutual in application, scope and obligations. In exchange for employment, Doss and Nordstrom agreed as follows:

> This Dispute Resolution Agreement ("Agreement") is governed by the Federal Arbitration Act, 9 U.S.C. § et seq. and evidences a transaction involving commerce. This Agreement applies to any disputes arising out of or related to your application for employment with Nordstrom or one of its affiliates, subsidiaries or parent companies ("Nordstrom"), your employment with Nordstrom or the termination of your employment. The Agreement applies to any such disputes even if they are brought by your parents, guardians, assigns, beneficiaries, spouse, children or heirs on your behalf.

Id. at Exhibit D. Immediately preceding Plaintiff's signature, she acknowledged that she understood and agreed to the Arbitration Agreement:

> I acknowledge that I have received and reviewed the Nordstrom Dispute Resolution Agreement and that I understand and agree to its terms and conditions. I also understand that the Dispute Resolution Agreement will continue to apply even after my separation from Nordstrom and that it cannot be modified by any oral agreement or representation but can be modified only in writing. Lastly, I understand and agree that nothing in the Dispute Resolution Agreement alters my at-will employment relationship with Nordstrom.

Id.

In agreeing to be bound by the stated alternative dispute resolution process, both Doss and Defendant Nordstrom preserved all of their substantive rights ("The arbitrator may award you or Nordstrom any remedy to which you or Nordstrom are entitled under applicable law, but such remedies shall be limited to those that would be available to you or Nordstrom in your/its

individual capacity in a court of law for the claims presented to and decided by the arbitrator, and no remedies that otherwise would be available to an individual in a court of law will be forfeited by virtue of this Agreement"); chose a neutral forum in which to resolve their disputes (the arbitrator to be selected by mutual agreement or pursuant to the Judicial Arbitration & Mediation Services Employment Arbitration Rules & Procedures); and agreed to waive any right to a jury trial. Id. This choice, freely and voluntarily entered into by Doss and Defendant after full disclosure, is a binding and enforceable contractual obligation of the parties to it.

Doss has not honored her agreement to arbitrate all claims against Defendant. Instead, she filed a Complaint in the United States District Court for the Middle District of Tennessee. See Doc. Entry No. 1. On August 25, 2015, counsel for Defendants advised Doss of the NDRA and requested that Doss voluntarily dismiss her Complaint. Doss declined. Having entered into the NDRA, for which she received valuable consideration and upon which Defendant relied, her Complaint must be dismissed and any resolution of her employment claims must occur, if she chooses to pursue them, pursuant to the NDRA.

### III. Legal Analysis

**A. The Federal Arbitration Act.**

The FAA provides that agreements to mediate and arbitrate, like that signed by Doss, are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. No such grounds here exist. The FAA applies broadly to any dispute "involving commerce," whether in state or federal court. Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56 (2003). In enacting Section 2 of the FAA, Congress declared a national policy favoring arbitration and required all courts rigorously enforce such agreements. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991). Recognizing this legislative

mandate, the United States Supreme Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983); see also Broaddus v. Rivergate Acquisitions, Inc., 2008 WL 4525410, at *1 (M.D. Tenn. Oct. 1, 2008) (Campbell, J.) ("There is a strong presumption in favor of arbitration, and any doubts regarding arbitrability must be resolved in favor of arbitration.")[2]. The United States Supreme Court has described the FAA provisions "as reflecting both a 'liberal policy favoring arbitration,' and the 'fundamental principle that arbitration is a matter of contract.'" AT&T Mobility, LLC v. Concepcion, 131 S. Ct. 1740, 1745 (2011) (citations omitted). "Courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." Id. (citations omitted).

The Supreme Court has emphasized that disputes in the employment context are no different than any other under the FAA: agreements to arbitrate employment-related claims are broadly enforceable. See Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119-20 (2001). Section 3 of the FAA requires a court to stay proceedings if an issue before the court should be arbitrated under an agreement covered by the FAA, and Section 4 directs the court to issue an order compelling arbitration if either party fails, neglects, or refuses to comply with the terms of the arbitration agreement. 9 U.S.C. §§ 3 & 4.

In deciding whether to compel arbitration, courts address two "gateway" issues: (1) whether there was an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002); see also Walker v. Ryan's Steak Houses, Inc., 289 F. Supp. 2d 916, 922 (M.D. Tenn. 2003). In this case, the answer to both inquiries is "yes."

---

[2] Unpublished opinions are attached.
4841-7269-9432.4

7

### i. The parties entered into a valid and enforceable agreement to arbitrate that covers this dispute.

Within the FAA's mandate of broad enforceability of arbitration agreements, state contract law principles govern whether the parties have a contractually valid agreement to arbitrate in any given case. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). The requisites for forming a valid contract in Tennessee are well settled. Contracts require an offer, Mason v. Pearson, 668 S.W.2d 656, 660 (Tenn. Ct. App. 1983), an effective acceptance of the offer, Pinney v. Tarpley, 686 S.W.2d 574, 580 (Tenn. Ct. App. 1984), and consideration. Campbell v. Matlock, 749 S.W.2d 748, 752 (Tenn. Ct. App. 1987). As evidenced by its plain language and execution by Doss, the NDRA meets the essential elements of an enforceable contract under Tennessee law. Similar agreements have been routinely enforced in the Sixth Circuit. See, e.g., Howell v. Rivergate Toyota, Inc., 144 Fed. Appx. 474 (6th Cir. 2005) (affirming district court's dismissal of the plaintiff's claims because he had signed a mandatory arbitration agreement); Saunders v. Am. Intercontinental Univ., No. CIV. 3:14-1045, 2014 WL 5776172 (M.D. Tenn. Nov. 5, 2014) (Trauger, J.); Allen v. Tenet Healthcare Corp., 370 F. Supp. 2d 682 (M.D. Tenn. 2005) (Trauger, J.); Wilks v. Pep Boys, 241 F. Supp. 2d 860 (M.D. Tenn. 2003) (Trauger, J.); Parker v. Rich Products Corp., 2014 WL 2442888, at *1 (M.D. Tenn. May 30, 2014) (Campbell, J.); Lewis v. Labor Ready Mid-Atl., Inc., 2009 WL 497692, at *6 (M.D. Tenn. Feb. 26, 2009) (Campbell, J.); Hardin v. Morningside of Jackson, L.L.C., 425 F. Supp. 2d 898, 908 (W.D. Tenn. 2006) (Campbell, J.)). Both the Ninth Circuit and the Northern District of Illinois have enforced Nordstrom's NDRA. See Davis v. Nordstrom, Inc., 755 F.3d 1089 (9th Cir. 2014); Gulley v. Nordstrom, Inc., No. 13 C 6145, 2014 WL 296034, at *1 (N.D. Ill. Jan. 27, 2014).

Seawright v. American General Financial Services, Inc., 507 F.3d 967 (6th Cir. 2007), analyzes the four factors considered in the Sixth Circuit when assessing the enforceability of an arbitration agreement: (1) whether the employee's continued employment with the employer constituted assent to the agreement; (2) whether sufficient consideration existed to form a contract; (3) whether the arbitration agreement was illusory; and (4) whether the agreement was an unenforceable adhesion contract. See id. Each of these factors supports enforcement of Doss' NDRA Program.

*1.  Doss' signature and continued employment constituted her assent to arbitration.*

Doss' signature agreeing to the NDRA and her continued employment with Nordstrom constituted her assent to the terms of the arbitration agreement. The Court in Seawright reviewed the enforceability of the arbitration agreement according to the Tennessee law of contract formation. Id. at 972. The written arbitration materials given to the employees in Seawright "clearly stated that continued employment after the effective date of the EDR Program would constitute the employee's acceptance of the agreement to arbitrate. Thus, under Tennessee law, [the employee] expressed a valid assent when she continued to work for [the employer]." Id. Accordingly, the employee's consent "came not from her silence in the face of an offer, but from her performance under the contract–that is, her continued employment." Id. at 973 n.2. The Court, therefore, held that continued employment can and does constitute acceptance. Id. In this case, Doss *signed* the NDRA on March 8, 2015, prior to performing her duties for which she was employed by Nordstrom. Porter Decl. at ¶¶ 5,11,12; Exhs. D, E. Even further, Doss agreed to be bound by arbitration in numerous instances during the onboarding process. Porter Decl. at ¶¶ 9-12; Exhs. C - G. Nordstrom's employment of Doss was sufficient consideration to make the NDRA binding and enforceable. Doss' direct assent, along with her

employment and continued employment constituted her acceptance to the NDRA's provisions. See Seawright, 507 F.3d at 972.

    2.    *Sufficient consideration existed to form a contract.*

Doss' and Nordstrom's mutual promises were sufficient consideration to form a binding contract to arbitrate. In Seawright, the Sixth Circuit looked to whether there was sufficient consideration for an enforceable contract. See Id. at 974. Under Tennessee law, "mutuality of promises is 'ample consideration' for a contract. A mutual promise 'in itself would constitute a sufficient consideration.'" Id. (quoting Pyburn v. Bill Heard Chevrolet, 63 S.W.3d 351 (Tenn. Ct. App. 2001)). Where the "employer and employee were equally obligated to arbitrate those disputes falling within the coverage of the plan," "[t]his is enough to ensure mutuality of obligation and thus constitute consideration." Id. Exactly the same is true here, where both parties mutually consented to the NDRA and agreed to submit any claim against one another to binding arbitration. Porter Decl. at ¶¶ 9,11-12; Exhs. C-E. Nordstrom also offered employment in exchange for Doss agreeing to the NDRA.

    3.    *The parties' NDRA is not illusory.*

Tennessee requires that a contract not be illusory, meaning that it must impose genuine obligations on both parties. See Parks v. Morris, 914 S.W.2d 545, 550 (Tenn. Ct. App. 1995) ("[I]f one or both parties to a contract have the right to cancel or terminate the agreement, then the contract lacks mutuality and is unenforceable."); see also Howell, 144 Fed. Appx. at 480 (finding mutuality requirement was satisfied simply because agreement required all disputes between the parties be resolved through arbitration). The NDRA in this case meets that standard because it "is the full and complete agreement relating to the formal resolution of employment-related disputes. Moreover, you and Nordstrom agree to remain bound by this Agreement even

if you transfer to a different position or location with Nordstrom and even after the employment relationship ends." Porter Decl. at Exhibit D.

    4.    *The NDRA Program is an enforceable contract in the employment context.*

The NDRA is not an unenforceable adhesion contract. The NDRA contains no substantive limitations on Doss' rights. It also imposes no onerous procedural requirements and is mutually binding on both parties. Doss had the option of not accepting the NDRA and could have sought employment elsewhere. Instead, Doss agreed to arbitration and Nordstrom employed her. The parties have a valid and enforceable agreement to arbitrate the claims in dispute. See Id. at 976; see also Johnson v. Long John Silver's Rests., Inc., 414 F.3d 583, 584 (6th Cir. 2005); Howell, 144 Fed. Appx. at 480; Cooper v. MRM Investment Co., 367 F.3d 493, 500-01 (6th Cir. 2004) (upholding arbitration agreements).

The Supreme Court has made it clear that "mere inequality in bargaining power [] is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." Gilmer, 500 U.S. at 32.

    **ii.**    **Doss' claims falls within the scope of the agreement to arbitrate.**

Doss asserts she was forced to resign from her employment because Defendants discriminated and retaliated against her in violation of Title VII and the ADEA. See Doc. Entry No. 1. The NDRA covers any claim arising out of Doss' employment or its termination and expressly covers the claims she pled in the Complaint:

> This Agreement applies to **any disputes** arising out of or related to your application for employment with Nordstrom or one of its affiliates, subsidiaries or parent companies ("Nordstrom"), your employment with Nordstrom or the termination of your employment. The Agreement applies to any such disputes even if they are brought by your parents, guardians, assigns, beneficiaries, spouse, children or heirs on your behalf.

4841-7269-9432.4

11

Case 3:15-cv-00904   Document 19   Filed 09/28/15   Page 11 of 14 PageID #: 129

Porter Decl. at Exhibit D (emphasis added). Accordingly, Doss' claims are covered under the NDRA. See Howsam, 537 U.S. at 84.

**B.      No Individual Liability Under Title VII or the ADEA.**

Actions of race discrimination under Title VII, age discrimination under the ADEA, and retaliation for complaints regarding the same lie against employers. See Doc. Entry No. 1. None of the Nordstrom Personnel are Plaintiff's employer. Under Title VII, an "employer" is a person engaged in an industry affecting commerce who has fifteen or more employees…and any agent of such a person." 42 U.S.C.A. § 2000e(b). It is well settled that liability under Title VII and the ADEA attaches only to an "employer" in employment discrimination actions. *See, e.g.*, *Bales v. Wal-Mart Stores, Inc.*, 143 F.3d 1103, 1111 (8th Cir.1998) (affirming dismissal of an individual because he was not the employer); *Morrow v. City of Jacksonville*, 941 F. Supp. 816, 820 (E.D. Ark. 1996) (same). As observed by the Sixth Circuit:

> The issue of an employee/supervisor's individual liability has been raised not only within the context of Title VII but also in its close counterparts, the Age Discrimination in Employment Act ("ADEA"), *29 U.S.C. §§ 621–634,* and the American with Disabilities Act ("ADA"), *42 U.S.C. §§ 12101–12117*. The liability schemes under Title VII, the ADEA, and the ADA are essentially the same in aspects relevant to this issue; they limit liability to the employer and use the term "agent" in defining employer. *See 42 U.S.C. §§ 2000e–5(b), 2000e(b)* (Title VII); *29 U.S.C. §§ 626(b), 630(b)* (ADEA); *42 U.S.C. §§ 12112(a), 12111(5)(A)* (ADA). Because Title VII, the ADEA, and the ADA define "employer" essentially the same way, an analysis based on Title VII, the ADEA, and the ADA case law is appropriate. *See E.E.O.C. v. AIC Security Investigations, Ltd., 55 F.3d 1276, 1279–80 (7th Cir .1995)*. Hence, we refer to and rely on case law under Title VII, ADEA, and the ADA throughout our opinion.

Wathen v. Gen. Elec. Co., 115 F. 3d 400, 404 n.6 (6th Cir. 1997) (agreeing with the Second Circuit that it is "inconceivable" that a Congress concerned with protecting small employers would simultaneously allow civil liability to run against individual employees).

The Sixth Circuit has clearly held that supervisors may not be individually held liable under Title VII or the ADEA. "As a matter of law, there is no individual liability for the

4841-7269-9432.4

12

individual defendants under Title VII." Dumm v. Rutherford Cnty., 2015 WL 1467173, at *6 (M.D. Tenn. Mar. 30, 2015); Wathen, 115 F. 3d 400 (6th Cir. 1997); see also Williams v. Michigan, 52 F. App'x. 723, 724 (6th Cir.2002) (holding that individual supervisors cannot be liable for employment discrimination under the ADEA); Jones v. Memphis Bd. of Edu., 1998 WL 898829, *1 (6th Cir. Dec. 16, 1998) (same). Accordingly, Plaintiffs' Title VII and ADEA claims against the Nordstrom Personnel individually must be dismissed.

## IV. Conclusion

Doss agreed to pursue all disputes arising out of her employment with Nordstrom through final and binding arbitration. The obligations in the NDRA are reciprocal. Doss' agreement to arbitrate with the Defendants is valid, covers the disputes raised in this lawsuit, and should be enforced. Arbitration, rather than a court of law, is the appropriate and chosen forum for resolution of Doss' claims. As to the Nordstrom Personnel, Sixth Circuit's controlling precedent is that no individual liability can be imposed under Title VII or the ADEA. Defendants' Motion to Compel and the Nordstrom Personnel's Motion to Dismiss should be granted and this case dismissed, or alternatively stayed pending arbitration.

        s/ Brittany R. Stancombe
Robert E. Boston (TN BPR #9744)
Brittany R. Stancombe (BPR #31691)
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219-8966
(615) 244-6380 (telephone)
(615) 244-6804 (facsimile)
bob.boston@wallerlaw.com
brittany.stancombe@wallerlaw.com

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was filed via Certified U.S. Mail and the court's electronic filing system upon the following:

Sheron B. Doss
Pro Se Plaintiff
P.O. Box 128014
Nashville, TN 37212
Phone: (615) 662-2213
Fax: (615) 646-1151
Sdoss01@msn.com

on this the 28th day of September, 2015.

s/ Brittany R. Stancombe

4841-7269-9432.4

14

Case 3:15-cv-00904   Document 19   Filed 09/28/15   Page 14 of 14 PageID #: 132